UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23550-Civ-COOKE/TORRES

AMERICAN SOUTHERN INSURANCE
COMPANY,

    Plaintiff,

vs.

BRENDA NESTOR,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before me on Plaintiff American Southern Insurance Company's ("ASIC") Motion for Partial Summary Judgment Against Brenda Nestor ("Motion on Liability") (ECF No. 20) and ASIC's Motion for Partial Summary Judgment Against Brenda Nestor on the Issue of Damages ("Motion on Damages") (ECF No. 33). Defendant Brenda Nestor ("Ms. Nestor") filed her response to ASIC's Motion on Liability (ECF No. 26) and ASIC filed its reply (ECF No. 28). However, Ms. Nestor did not respond to ASIC's Motion on Damages and the time to do so has long-since passed. For the reasons discussed below, ASIC's Motion on Liability (ECF No. 20) is **GRANTED in part and DENIED in part** and ASIC's Motion on Damages (ECF No. 33) is **GRANTED in part and DENIED in part**.

### I. BACKGROUND

ASIC is a Kansas corporation that functions, among other things, as a licensed surety company providing construction payment and performance bonds to entities who want to perform work on construction projects. Aff. 1, ¶1, ECF No. 21-1.[1] At the request of the

---

[1] ASIC relies primarily on two almost identical affidavits from Edward P. Vollertsen, ASIC's Vice President of Surety, Claims, which essentially parrot many of the statements alleged in the Complaint. Ms. Nestor claims the affidavit represents inadmissible hearsay; however, Mr. Vollertson claims to have personal knowledge of the facts contained in the affidavit. Importantly, most of the material facts are undisputed by Ms. Nestor and are supported by documents in the record, such as the General Agreement of Indemnity, the bonds, invoices, and releases.

Estate of Victor Posner and several limited liability companies owned by or operating under the Estate of Victor Posner (collectively "the Estate"), ASIC issued various bonds to secure the Estate's work on various construction projects. *Id.* at ¶2. Specifically at issue in the instant case are two bonds as described below:

a.  Bond No.:     B98800022065
    Principal:    Monmouth Construction Phase 5, Section 2, LLC
    Penal Sum:    $128,020.00
    Project:      Monmouth Meadows Phase 5, Section 2 – Sidewalks
    ("Sidewalks Bond")

b.  Bond No.:     B98800022066
    Principal:    Monmouth Construction Phase 5, Section 2, LLC
    Penal Sum:    $105,406.00
    Project:      Monmouth Construction Phase 5, Section 2, Maintenance Agreement – Roads
    ("Roads Bond")

*Id.* at ¶5; ECF No. 21-1, p. 7–8. Both bonds were signed by Ms. Nestor on April 8, 2010, as an "Authorized signature" for Monmouth Construction Phase 5, Section 2, LLC and the "Name/Title" line states "Brenda Nestor, PR of Estate of Victor Posner." ECF No. 21-1, p. 7–8. ASIC is listed as the surety on both bonds and Harford County, Maryland is listed as the obligee. *Id.*

To induce ASIC to issue the bonds, Ms. Nestor signed a General Agreement of Indemnity ("GAI") dated April 13, 2010. Aff. 1, ¶6. Ms. Nestor signed the GAI three times; once under Indemnitor: Monmouth Construction Phase 5 Section 2, LLC, as "Brenda Nestor, Managing Member"; once under Estate of Victor Posner, as "Brenda Nestor, Personal Representative"; and once under handwriting that appears to be her name, as "Brenda Nestor, Individually." GAI, p. 3. Below the signature blocks on the GAI, the GAI states in pertinent part "IMPORTANT: . . . COMPLETE ADDRESS, INLCUDING ZIP CODE, MUST BE GIVEN FOR ALL INDEMNITORS. INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PERMANENT RESIDENCE." *Id.* Ms. Nestor's address as listed on the GAI is the same address indicated for service of court documents in this case. Nevertheless, Ms. Nestor contends that she never meant to indemnify ASIC in her individual capacity.[2] ECF No. 26, p. 3.

---

[2] Ms. Nestor's Response to Plaintiff's Motion on Liability (ECF No. 26) is a confusing mixture of Ms. Nestor's affidavit, response to ASIC's statement of undisputed material

While I have reviewed the GAI in its entirety, certain relevant portions are laid out below:

> 2. The Indemnitors will indemnify and save [ASIC] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [ASIC] may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefor, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by [ASIC], the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefor to the Company.
>
> 5. [ASIC] shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against ASIC or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.
>
> 13. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to [ASIC] of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.
>
> 19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS – SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

After ASIC issued the bonds and Ms. Nestor had signed the GAI, the obligee notified ASIC of claims against the bonds pertaining to the Estate's performance and/or payment obligations on the projects. Aff. 1, ¶7. In compliance with the GAI, ASIC advised Ms. Nestor of the obligee's claims and demands related to the bonded projects "and demanded

---

facts, and legal argument; however, in the interest of justice I will construe her response to be in compliance with Local Rule 56.1(a) and any factual statement in her response to be part of her affidavit.

3

that Ms. Nestor immediately exonerate and indemnify ASIC from any and all liability arising out of the claims against those Bonds." *Id.* at ¶8. Ms. Nestor did not resolve obligee's claims against the bonds, did not provide ASIC with any financial records or books as requested by ASIC, and ultimately did not pay ASIC for any costs already incurred with respect to the claims against the bonds or any future claims that might arise against the bonds. *Id.* at ¶9. Ms. Nestor also provided no proof to ASIC that any of the obligee's claims were without merit. *Id.* at ¶10.

ASIC hired consultants and counsel to respond to, investigate, and defend against the obligee's claims. Aff. 2, ¶11. To date, ASIC has paid $141,051.45 towards settling the claims. Aff. 2, ¶14. ASIC paid a total of $113,105.00 to settle claims from two different companies against the bonds in exchange for a release of the claims. *See id.* at ¶11; ECF No. 34-1, p. 7–12. The documents pertaining to the settling of the claims are dated from September 29, 2016 through November 2, 2016. ECF No. 34-1, p. 7–12. ASIC was able to recover $7,575.00 in contract proceeds to offset its damages under the bonds. Aff. 2, ¶12; ECF No. 34-1, p. 24. In settling the claims, ASIC paid $35,521.45 in consultants' fees. Aff. 2., ¶13; ECF No. 34-1, p. 14–22. The consulting invoices date from April 25, 2016 through January 17, 2017. ECF No. 34-1, p. 14–22. ASIC maintains that it will continue to incur costs, as the projects for which the Bonds were issued have not yet been completed.

Ms. Nestor states that she was removed as personal representative of the Estate on June 16, 2015, after which she had no further access to the Estate's books or financial records. ECF No. 26, p. 3. Ms. Nestor does not claim, and ASIC denies, that she ever informed ASIC of her removal as Estate representative or that she wished to terminate the GAI prior to the initiation of this lawsuit. On October 18, 2016, the Estate entered into an agreement with ASIC whereby the Estate and ASIC stipulated to settle ASIC's claim of indemnity in the amount of $250,720.00. ECF No. 26-1. The settlement pertains to three bonds, only one of which—the Roads Bond—is at issue in this case. *Id.* However, the stipulation classifies ASIC as a Class 7 claimant of the Estate and there is no indication that ASIC received any payment on the claim by the Estate. *Id.*

ASIC filed this lawsuit on August 17, 2016, alleging breach of contract/contractual indemnity (Count I), common law indemnity (Count II), specific performance (Count III), and exoneration (Count IV).

## II. LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record . . . mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## III. DISCUSSION

Because this case is before me on diversity grounds pursuant to 28 U.S.C. § 1332, Florida substantive law rules applies. *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990) (A "district court, having obtained jurisdiction through diversity of citizenship, is bound to apply the substantive law of the state in which it is located."). The Parties appear to agree, not having addressed any other substantive law as it applies to the GAI.

### A. Ms. Nestor's Liability under the GAI

ASIC argues in its Motion on Liability that there are no genuine issues of material fact that Ms. Nestor is liable as an Indemnitor to ASIC under the GAI. "Under Florida law, the indemnity agreement, and not the performance bond, delineates the rights and obligations of a principal and surety." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1309 (S.D. Fla. 2008) (citing *Aetna Ins. Co. v. Buchanan,* 369 So.2d 351, 354 (Fla. 2d DCA 1979); *Harrison v. Am. Fire & Cas. Co.,* 226 So.2d 28, 29 (Fla. 4th DCA 1969)). Ms. Nestor makes several arguments as to why she should not be held liable as an indemnitor under the GAI, and I will address each of them in turn. Ms. Nestor first claims that the GAI only provides for one Indemnitor and she is not the principal indemnitor responsible under the GAI. In Florida, "[t]he parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language language." *Whitley v. Royal Trails Prop. Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. Dist. Ct. App. 2005) (internal citations omitted). The plain language of the GAI unambiguously allows for, and anticipates, more than one indemnitor; the plural "Indemnitors" is used throughout the GAI, despite the signatory page—which has lines for multiple signatories—stating the singular "Indemnitor." *See* GAI.

Ms. Nestor also claims that she did not sign the GAI with the intent to be individually liable. However, Ms. Nestor signed the GAI as "Brenda Nestor, *Individually*."

GAI, p. 3 (emphasis added). In addition, the GAI makes special mention of Indemnitors who sign in their individual capacity, requiring them to list their personal address on the GAI, which Ms. Nestor did. "Execution of the agreement . . . as corporate officers and 'Individually' clearly reveals an intention to be bound individually." *Simpson v. Robinson*, 376 So. 2d 415, 415 (Fla. Dist. Ct. App. 1979). Ms. Nestor's claim now that she did not intend to be individually liable is not relevant or admissible evidence, since the language of the contract is clear and unambiguous. *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. Dist. Ct. App. 2005) ("[I]f a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract."); *see also Key v. Allstate Ins.*, 90 F.3d 1546, 1548–49 (11th Cir. 1996).

Ms. Nestor next argues that any liability she may have had ended once she was removed as the personal representative of the Esate. According to Ms. Nestor's affidavit/response to ASIC's Motion on Liability, she was removed as personal representative on June 15, 2016. ECF No. 26, C. ¶4. However, prior to this lawsuit, Ms. Nestor never terminated the GAI under the terms of the agreement. To terminate the agreement, the GAI is clear that an Indemnitor must provide a minimum of ten days' written notice to ASIC, "but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force." GAI, ¶12. Prior to this lawsuit, there is no record evidence that Ms. Nestor ever provided written notice to ASIC of her intent to terminate her obligations under the agreement either in her individual or representative capacity, and even if she had, she would still be liable for any claim having arisen on the bonds prior to her notice of her intent to terminate. *See Buhler V. Travelers Indem. Co.*, 174 So. 2d 59, 60 (Fla. D. Ct. App. 1965). However, I find that Ms. Nestor's Answer and Affirmative Defenses (ECF No. 13) constitutes written notice of her intent to terminate the GAI as to her individually. Because it was served on ASIC's counsel via electronic delivery and/or United States Mail on September 16, 2016, Ms. Nestor's obligations under the GAI ended after September 26, 2016. Ms. Nestor remains liable for any and all obligations that were in force on or before September 26, 2016.

Ms. Nestor also claims that the settlement agreement between ASIC and the Estate precludes her individual liability under the GAI. However, the GAI clearly provides for

joint liability among the Indemnitors. "[ASIC] is expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others . . . ." GAI, ¶8. Further, only one of the three bonds referenced in the settlement agreement is at issue in this action, the Roads Bond. Whether ASIC has reached an agreement with a co-Indemnitor does not affect Ms. Nestor's liability under the GAI, whether or not it affects the amount ASIC can ultimately recover.

Lastly, I address Ms. Nestor's claims that the bonds at issue here do not relate to the GAI since the GAI was issued five days after the bonds were signed, in contradiction to ASIC's claims that the GAI induced the issuance of the bonds. However, the GAI provides that "THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS . . . *HERETOFORE* OR HEREAFTER EXECUTED BY [ASIC] ON BEHALF OF THE INDEMNITORS." GAI, ¶19 (emphasis added). Both of the bonds were signed by Brenda Nestor as "PR of Estate of Victor Posner" and list Monmouth Construction Phase 5 Section 2, LLC as the Principal. ECF No. 21-1, p. 7-8. These names coincide with the listed Indemnitors on the GAI, indicating that the bonds were issued by ASIC "on behalf of" the Indemnitors.

For all of the above reasons, Ms. Nestor has not established that there is a genuine issue of material fact as to her categorization as indemnitor and her liability under the GAI; ASIC is entitled to judgment as a matter of law as to Ms. Nestor's liability under the GAI up through and including September 26, 2016.

**B. ASIC's Damages**

"A surety is entitled to reimbursement pursuant to an indemnity contract for any payments made by it in a good faith belief that it was required to pay, regardless of whether any liability actually existed." *Thurston v. Intn'l Fidelity Ins. Co.*, 528 So.2d 128, 129 (citing *Waterhouse v. McDevitt & Street Co.,* 387 So.2d 470 (Fla. 5th DCA 1980)). Pursuant to the GAI, the Indemnitors agreed to indemnify and save ASIC "harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [ASIC] may pay or incur in consequence of having executed . . . such bonds . . . . In the event of payment by [ASIC], the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefor to the

Company." GAI, ¶2. Further, the GAI specifically authorizes ASIC to determine unilaterally whether and how to settle a claim against a bond. GAI, ¶5. "[W]here the indemnification claim is based on a written contract of indemnification, many courts recognize that a showing of potential liability is all that is required even if notice is not given." *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So.2d 1072, 1080 n.4 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1216 (5th Cir. 1986)). Here, Mr. Vollertson's affidavits state that ASIC provided notice to Ms. Nestor of the obligee's claims against the bond and "demanded that Ms. Nestor immediately exonerate and indemnify ASIC from any and all liability arising out of the claims against the Bonds." Aff. 2, ¶8. There is no dispute that ASIC faced potential liability under the bonds and was therefore within its rights to settle the claims, entitling ASIC to be indemnified for its costs associated with settling the claims. The only defense to indemnity is bad faith on the part of the surety. *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, 2009 WL 4110110, at *2 (S.D. Fla. Nov. 24, 2009) (citing *Liberty Mutual Ins. Co.*, 534 F.Supp.2d. at 1302–08). Ms. Nestor does not claim that ASIC made payments on the bonds in bad faith, nor is there any evidence in the record to suggest bad faith.[3] As such, Ms. Nestor is contractually obligated to indemnify ASIC for payments it made in settling claims against the bonds arising before she terminated the GAI.

The GAI states "the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefor to the Company." GAI, ¶8. Ms. Nestor does not in any way dispute ASIC's invoices, check requests, and conditional final releases as to ASIC's settlement of two claims. *See* ECF No. 34-1, p. 7–12. ASIC even provided a copy of contract proceeds it received to offset its damages. *See* ECF No. 34-1, p. 24. While the check requests and invoices are dated in October and November of 2016, *after* Ms. Nestor notified ASIC of her intent to terminate the GAI as to her individually, Mr. Vollertson's affidavits presume that the claims arose before the initiation of this action, thus necessitating this lawsuit. Most significantly, Ms. Nestor does not dispute that the claims ASIC settled arose prior to the filing of the lawsuit and her termination of the GAI. Ms. Nestor is therefore liable to ASIC

---

[3] As stated before, Ms. Nestor did not respond in any way to ASIC's Motion on Damages (ECF No. 33) or ASIC's Statement of Undisputed Material Facts (ECF No. 34).

in the amount of $105,530—the amount of the claims ASIC paid against the bonds, less the contract proceeds recovered.

With respect to the consulting fees, however, ASIC has not alleged or shown that the fees are reasonable. Even if the above "good faith" payment standard applies to attorney's fees and costs associated with settling a claim, the fees must still be reasonable. "Indeed, if good faith in this context did not include reasonableness, the indemnitee would have no incentive to police its attorneys' activities and charges, since it could simply dump any and all charges billed onto the indemnitor. Such a result would make no sense." *Travelers Cas. & Sur. Co. of Am.*, 2009 WL 4110110, at *4 (quoting *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 150 (D.C. Cir. 1997)). The consulting invoices all relate to the Roads Bond only and total $35,521.45, over a third of the penal sum of the bond itself. Additionally, the invoices continue beyond the resolution of the claims at issue in this case, making it unclear as to what exactly the consulting fees pertain, given that ASIC obtained a release of claim. While Ms. Nestor has not disputed the reasonableness of the consulting fees, the amount of the fees is not reasonable on its face. ASIC has not met its burden of proving reasonableness as a matter of law as to its consulting fees.

### III. CONCLUSION

For the reasons stated above, ASIC's Motion on Liability (ECF No. 20) is **GRANTED in part and DENIED in part** and ASIC's Motion on Damages (ECF No. 33) is **GRANTED in part and DENIED in part**. It is hereby **ORDERED and ADJUDGED** as follows:

1. Ms. Nestor is liable under the General Agreement of Indemnity for obligations arising out of Bond B98800022065 and Bond B98800022066 up through and including September 26, 2016.
2. Ms. Nestor is currently liable to ASIC in the amount of $105,530.00.
3. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE and ORDERED** in Chambers, Miami, Florida, this 12th day July 2017.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*